1

2

3

4

5

6

7

8

**UNITED STATES DISTRICT COURT**

9

**DISTRICT OF NEVADA**

10

**\* \* \***

11

| | | |
|---|---|---|
| JOANNA S. KISHNER, | ) | Case No.: 2:10-cv-01858-RLH-RJJ |
| Plaintiff, | ) | **O R D E R** |
| vs. | ) | (Motion for Temporary Restraining Order–#10) |
| NEVADA STANDING COMMITTEE ON JUDICIAL ETHICS AND ELECTION PRACTICES; Committee Members DAN R. REASER, CHAIRMAN, IN HIS OFFICIAL CAPACITY; ERIC DOBBERSTEIN, IN HIS OFFICIAL CAPACITY; WILLIAM E. DOUGAL, M.D., IN HIS OFFICIAL CAPACITY; SUSAN J. MILLER, IN HER OFFICIAL CAPACITY; HON. DAN L. PAPER, IN HIS OFFICIAL CAPACITY, | ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

12

13

14

15

16

17

18

19

20

21

22        Before the Court is Plaintiff Joanna S. Kishner's **Motion for Temporary**

23   **Restraining Order** ("TRO") (#10), filed October 22, 2010.  The Court has also considered

24   Defendant Nevada Standing Committee on Judicial Ethics and Election Practices' ("Committee")

25   Opposition (#16).  In addition, the Court heard the parties' oral arguments relating to this motion

26   on October 28, 2010.

1

AO 72
(Rev. 8/82)

## BACKGROUND

Plaintiff Joanna Kishner is currently running against Phillip Dabney for district court judge of the newly created Department 31 of the Eighth Judicial District Court of the State of Nevada.  On September 13, 2010, Kishner and Dabney appeared jointly on Jon Ralston's *Face to Face* television program.  During the course of the program the following conversation between Ralston and Kishner occurred:

| | |
|---|---|
| Ralston: | "Why would voters choose you over Mr. Dabney?" |
| Kishner: | "Well, I think you're not only are you looking at somebody who has an impeccable record, but you're looking at somebody who has the integrity and the sound judgment that I've demonstrated throughout my 21 plus years of being a lawyer.  Um, I think if you look I've never had a bar complaint against me, I have never been sued, um, and unfortunately I think if you look at my opponent he can't answer exactly the same way.  I think"-- |
| Ralston: | "What does that mean"-- |
| Kishner: | "Um"-- |
| Ralston: | "you're saying he doesn't have integrity"-- |
| Kishner: | "No." |
| Ralston: | "you're saying he's been sued, you're saying he doesn't have an impeccable record?" |
| Kishner: | "Um, I'm saying there has been a couple of questions about judgment.  I think he has been sued on multiple times, you can ask him.  I think that there was at least one issue where the Nevada Supreme Court said that he had violated two of the Supreme Court rules.  And that was the situation where an elderly client, um, his firm changed her estate planning and so he personally benefitted about a quarter of a million dollars.  Now, I'm not saying that..." |
| Ralston: | "Wow, that's a serious allegation that you're making right here, that he used his position to get a quarter of a million dollars?" |
| Kishner: | "I'm not saying he used his position.  I'm saying the facts speak for themselves that the Nevada Supreme Court said that the actions were a violation of former Supreme Court Rules 158 and 160." |
| Ralston: | "Did he get disciplined for it, do you know?" |
| Kishner: | "Um, ah, you'll have to ask him, I don't believe he ended up getting disciplined for it because of the result of the litigation that incurred." |

(Dkt. #9, Notice of Manual Filing, DVD containing Jon Ralston's *Face to Face* television program, aired September 13, 2010.)

The case Kishner referred to involving an "elderly client" and the Nevada Supreme Court is *Ricks v. Dabney (In re Jane Tiffany Living Trust 2001)*, 177 P.3d 1060 (Nev. 2008) ("*Tiffany*").  In *Tiffany*, Ricks sought to overturn Dabney's designation as a beneficiary of Jane

AO 72
(Rev. 8/82)

1   Tiffany's estate in a trust proceeding after Tiffany's death.  *Id.* at 1062.  Ricks presented two

2   arguments to the district court which are at issue here in Kishner's case.  First, he argued that

3   Dabney's designation was a product of undue influence because Dabney's law partner, Kenneth A.

4   Woloson, prepared Tiffany's living trust.  Second, Ricks argued that the district court should set

5   aside the Tiffany's living trust because Dabney and Woloson violated Supreme Court Rules

6   ("SCR") 158 and 160 relating to their professional conduct.  The district court determined that

7   Dabney successfully rebutted the presumption of undue influence by clear and convincing

8   evidence.  In addition, "despite the apparent violations of SCR 158 and 160," the district court

9   refused to set aside the living trust.  *Id.* at 1064.  Ricks then appealed the case to the Nevada

10   Supreme Court.  The Nevada Supreme Court affirmed the district court's findings.  The *Tiffany*

11   court found that Dabney had successfully rebutted the presumption of undue influence by clear and

12   convincing evidence.  The Court further concluded that the district court did not abuse its

13   discretion in refusing to set aside Tiffany's living trust even though Dabney and Woloson

14   committed "per se violations" of the Nevada Rules of Professional Conduct (former SCR 158 and

15   160).  *Id.*

16          On October 7, 2010—twenty-four days after the *Face to Face* program—Dabney

17   filed a complaint with the Committee alleging that Kishner violated Canon 4 and Rule 4.1(A)(11)

18   of the Nevada Code of Judicial Conduct with her comments on *Face-to-Face*.  In his complaint,

19   Dabney argued that Kishner purposely omitted the Nevada Supreme Court's conclusion in *Tiffany*

20   concerning undue influence in order to mislead the public to harm Dabney's reputation as an

21   attorney and a judicial candidate.  Dabney further argued that Kishner was not fair and accurate,

22   and was misleading, by suggesting that Dabney was not disciplined because of the resulting

23   litigation.  According to Dabney, "[t]here was no discipline involved in this case.  There was no

24   plan to impose discipline on me that disappeared due to resulting litigation." (Dkt. #10, Ex. 4,

25   Judicial Election Complaint Form 3, Oct. 5, 2010.)

26   /

3

1    Kishner responded to Dabney's complaint on October 14.  She defended her

2  statements on several bases, including that her statements were either true or opinion and

3  constituted protected speech under the First Amendment.  On October 19, the Committee held a

4  private hearing to adjudicate Dabney's complaint.  At the conclusion of the hearing, the

5  Committee announced its decision: Kishner had violated Canon 4 and Rule 4.1 for her comments

6  on *Face-to-Face*.  Kishner claims that the Committee did not provide the basis or rationale of its

7  decision, but stated it would do so within its decision, which would be posted on its website and

8  publicly disseminated on or after October 25.

9    On Friday, October 22, Kishner commenced this action alleging the following

10  causes of action: (1) violation of 1st and 14th Amendment rights: facial; (2) violation of 1st and

11  14th Amendment Rights: as applied; (3) violation of 5th and 14th Amendments: vagueness and

12  over breadth; (4) declaratory relief; (5) violation of due process; and (6) separation of powers.

13  (Dkt. # 2, Compl.)  She also filed the instant TRO motion asking the Court to temporarily restrain

14  Defendants from public dissemination and/or publication of the Committee's decision to censure

15  her. (Dkt. #10, TRO motion.)  Kishner contemporaneously informed the Committee that she filed

16  an action against Defendants.  (Dkt. #14-1, Ex. 6, Letter to David F. Sarnowski dated Oct. 22,

17  2010.)  Nevertheless, the Committee published its decision on their website on Monday, October

18  25. (Dkt. 14-1, Ex. 2, Committee Decision dated Oct. 25, 2010.)  As a result of this development,

19  Kishner filed a supplemental brief (#14) in support of her motion Tuesday night, October 26,

20  amending her request for relief.  Kishner now asks the Court to order the Committee to

21  immediately: "(1) withdraw the censure decision pending this Court's ruling on a preliminary

22  injunction; (2) remove the censure decision from the Committee's website and post this Court's

23  decision ordering removal; and (3) provide notice of withdrawal and a copy of the Court's ruling

24  to the individuals to whom the Committee disseminated the censure decision." (Dkt. #14, Supp.

25  Brief 15.)  For the reasons the Court stated in the hearing and discussed below, the Court grants

26  Kishner's TRO motion and enters a preliminary injunction.

4

AO 72
(Rev. 8/82)

**DISCUSSION**

**I.     Legal Standard**

Under Rule 65(b) of the Federal Rules of Civil Procedure, plaintiffs seeking a temporary restraining order or preliminary injunction must establish: (1) a likelihood of success on the merits, (2) a likelihood of irreparable harm in the absence of preliminary relief, (3) the balance of equities tips in their favor, and (4) an injunction is in the public interest. *Winter v. Natural Res. Def. Council, Inc.*, 129 S. Ct. 365, 374 (2008). Applying *Winter*, the Ninth Circuit has since held that, to the extent previous cases suggested a lesser standard, "they are no longer controlling, or even viable." *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1127 (9th Cir. 2009). Thus, a party must satisfy each of these four requirements.

**II.    Likelihood of Success on the Merits**

In support of her motion, Kishner argues that Canon 4 and Rule 4.1(A)(11) of the Nevada Code of Judicial Conduct violate her First Amendment rights to free political speech under facial challenges and as applied specifically to her. She also argues that these provisions are vague and overbroad in violation of her Fifth and Fourteenth Amendment rights. Canon 4 provides, "[a] judge or candidate for judicial office shall not engage in political or campaign activity that is inconsistent with the independence, integrity, or impartiality of the judiciary." Rule 4.1(A)(11) provides, "[e]xcept as permitted by law, or by Rules 4.2, 4.3, and 4.4, a judge or a judicial candidate shall not . . . *knowingly, or with reckless disregard for the truth, make any false or misleading statement* . . . ." *Id.* (empahasis added). In addition, Comment 7 to Rule 4.1(A)(11) (hereinafter, the "Rule") provides:

> Judicial candidates must be scrupulously fair and accurate in all statements made by them and by their campaign committees. Paragraph (A)(11) obligates candidates and their committees *to refrain from making statements that are false or misleading, or that omit facts necessary to make the communication considered as a whole not materially misleading.*

*Id.* (emphasis added).

AO 72
(Rev. 8/82)

1     To assess the constitutionality of a canon of judicial conduct relating to state

2  elections, the Court must examine whether the canon burdens rights protected by the First and

3  Fourteenth Amendments. *Eu v. S.F. Cnty. Democratic Cent. Comm.*, 489 U.S. 214, 222 (1989).

4  Furthermore, because the language of the Rule has its roots in defamation law, the Court will

5  analyze the Rule under the constitutional standard set forth by the United States Supreme Court in

6  *New York Times Co. v. Sullivan*, 376 U.S. 254 (1964). *See In re Chmura*, 464 Mich. 58, 626

7  N.W.2d 876, 885 (Mich. 2001). Under the *Sullivan* standard, a plaintiff in a defamation action

8  must show the falsity of a statement that the defendant acted with "actual malice" when he related

9  the defamatory falsehood. *N.Y. Times Co. v. Sullivan*, 376 U.S. at 279–80; *see also, e.g., Harte*

10  *Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 686, 562 (1989). If the challenged rule

11  burdens a judicial candidates right to free political speech, it can only survive constitutional

12  scrutiny if the state shows that it advances a compelling state interest, and is narrowly tailored to

13  serve that interest. *See Eu*, 489 U.S. at 222; *see also McIntyre v. Ohio Elections Comm.*, 514 U.S.

14  334, 357 (1995) (restrictions on core political speech must withstand strict scrutiny).

15     **A.     The Rule's Facial Burden on Political Speech**

16     The First Amendment states, "Congress shall make no law . . . abridging the

17  freedom of speech." Of course, the Free Speech Clause is incorporated against the states via the

18  Due Process Clause of the Fourteenth Amendment. *Gitlow v. New York*, 268 U.S. 652, 666

19  (1925). The First Amendment grants broad protection to political expression in order "to assure

20  [the] unfettered interchange of ideas." *Roth v. United States*, 354 U.S. 476, 484 (1957). First

21  Amendment protections are not only confined to the expression of ideas, it also protects the free

22  discussion of governmental affairs, including discussions of candidates. *McIntyre*, 514 U.S. at

23  346. "It is of particular importance that candidates have the unfettered opportunity to make their

24  views known so that the electorate may intelligently evaluate the candidates' personal qualities

25  and their positions on vital public issues before choosing among them on election day." *Buckley v.*

26  *Valeo*, 424 U.S. 1, 52–53 (1976).

AO 72
(Rev. 8/82)

1    Kishner argues that the Rule is a content-based restriction on her political speech

2  because, by its plain language, its purpose is to regulate a type of speech—political speech by

3  judicial candidates.  She also argues that the Rule constitutes a prior-restraint on her speech.  The

4  Committee does not contest these arguments.  Instead, the Committee asserts that the Rule serves

5  a compelling state interest and is narrowly tailored to pass strict scrutiny.  In response, Kishner

6  maintains that First Amendment jurisprudence has never allowed the government to prohibit

7  candidates from communicating relevant information to voters during an election, unless the

8  statements are false.  Accordingly, Kishner claims that the Rule and the actions of the Committee

9  based upon the Rule are unconstitutional because they prohibit more than false statements—they

10  also prohibit truthful statements that a hypothetical individual may find misleading.

11    To determine whether Kishner has a likelihood of success on the merits of her

12  claims, the Court must assess whether the state has a compelling interest to proscribe speech in the

13  manner described by the Rule and its comments and then determine whether the Rule is narrowly

14  tailored to achieve their interest.

15  **1.    Compelling Interest**

16    The Committee argues that Nevada has a compelling interest in prohibiting judicial

17  candidates from making knowing misrepresentations or statements that may be misleading.

18  Kishner claims that government regulations of political speech may only prohibit communications

19  which are objectively false.

20    It is well established that the government cannot have a compelling interest in

21  proscribing constitutionally protected speech.  Requiring candidates to avoid "misleading" the

22  electorate would hinder protected speech as candidates sought to avoid, perhaps inadvertently,

23  violating this broad rule.  *Butler v. Alabama Jud. Inquiry Comm.*, 111 F.Supp.2d 1224, 1237

24  (M.D. Ala. 2000).  Such a restriction runs afoul of clearly established constitutional protections.

25  *See Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 18-19 (1990) (Speech that can reasonably be

26  interpreted as a statement of opinion is protected as long as the opinion "does not contain a

7

AO 72
(Rev. 8/82)

1   *provably false* factual connotation"(emphasis added)).  Judicial candidates may inevitably engage

2   in "vehement, caustic, and sometimes unpleasantly sharp attacks on government and public

3   officials." *New York Times Co.*, at 270.  As a result of these attacks, "political speech by its nature

4   will sometimes have unpalatable consequences." *McIntyre v. Ohio Elections Comm.*, 514 U.S.

5   334, 357 (1995).  However, those consequences must not spur constitutionally impermissible

6   rules.

7          The Rule at issue in this case extends beyond unprotected, objectively false

8   representations and also proscribes subjective statements based in truth.  Although the Committee

9   represents that the Rule simply advances a compelling interest in prohibiting judicial candidates

10  from making knowing misrepresentations, they cannot claim the same compelling interest in

11  hindering protected political speech.  Thus, the Court concludes that the Rule impermissibly

12  prohibits candidates from conveying true statements to the public simply because the statements

13  could be misconstrued by some part of the general public.

14                  **2.      Narrowly Tailored**

15          To justify regulation of a protected category of speech, the government must show

16  that the regulation is narrowly tailored to achieve a compelling governmental interest.  *McIntyre*,

17  514 U.S. at 347.  "When a State seeks to restrict directly the offer of ideas by a candidate to the

18  voters, the First Amendment surely requires that the restriction be demonstrably supported by not

19  only a legitimate state interest, but a compelling one, and that the restriction operate without

20  unnecessarily circumscribing protected expression." *Brown v. Hartlage*, 456 U.S. 45, 53–54

21  (1982).

22          The Committee argues that Nevada has a compelling interest in prohibiting judicial

23  candidates from making knowing misrepresentations and that the relevant Canon is narrowly

24  tailored to serve that purpose.  Kishner argues that the Rule is not narrowly tailored because it

25  prohibits more than false statements; it also prohibits truthful statements that some hypothetical

26  individual may find misleading.  Kishner further notes that the Committee admits that her

8

AO 72
(Rev. 8/82)

statements on *Face-to-Face* were either true or opinion.  Thus, Kishner contends that the Rule is

an impermissible burden on her political speech because it chills candidates from making any

statement for fear that factual misstatements, or even truthful statements which might be construed

as misleading for lack of context, will subject them to censure or discipline, including disbarment.

The Court agrees with Kishner's contention that the Rule is not narrowly tailored.

Because the Committee has the authority to impose sanctions, the Rule chills candidates from

making even truthful statements which might be construed as misleading and may subject them to

censure or discipline.  A rule cannot be narrowly tailored when it prohibits more than false

statements to include *truthful* statements that some person may find misleading.

**C.      Vagueness, Overbreath, and "As Applied" Challenges to the Rule**

It's well established that law is unconstitutionally vague if a reasonable person

cannot tell what speech is prohibited and what is permitted.  Unduly vague laws violate due

process whether or not speech is regulated.  *Connally v. Gen. Constr. Co.*, 269 U.S. 385, 39 (1926)

("A law is unconstitutionally overbroad if it regulates substantially more speech than the

Constitution allows to be regulated, and a person to whom the law constitutionally can be applied

can argue that it would be unconstitutional as applied to others.")  Furthermore, a "statute may be

invalid as applied to one state of facts and yet valid as applied to another."  *Dahnke-Walker*

*Milling Co. v. Bondurant*, 257 U.S. 282, 289 (1921).

Kishner argues that the various rules, canons, and comments used by the

Commission to regulate Kishner's speech are void for vagueness because a reasonable person

cannot discern what speech it prohibits.  Kishner also argues that the application of these

comments to the Rule make it over broad because it proscribed substantially more speech than

necessary.  For example, Kishner told Ralston that Dabney violated the rules of professional

conduct (former SCR 158 & 160).  But according to the committee's interpretation of the Rule in

its decision, she would have had to include a statement that he did not exert undue influence over

Tiffany in order to avoid misleading the public.  The Committee states that Kishner merely

1    attempts to create the impression of vagueness by "speaking in generalities about the various

2    Rules and Canons regulating the speech of judicial candidates."

3              The Court finds that the Rule and Comments are in fact vague because a judicial

4    candidate cannot objectively ascertain what additional facts must be included to avoid a

5    "materially misleading statement."  As for overbreadth, the Rule regulates substantially more

6    speech than is constitutionally permissible.  Instead of simply proscribing false statements, which

7    constitutes unprotected speech, the Rule also proscribes *misleading* political speech, which

8    involves protected speech.  In other words, the Rule punished Kishner for not saying enough, even

9    though her statement was true.  Specifically, the decision stated: "If Kishner was attempting to be

10   painstakingly fair and accurate, she also would have made an effort to include in her statement the

11   numerous and detailed facts the Nevada Supreme Court identified as important in judging the

12   character and nature of Dabney's conduct in the Tiffany Trust case."  (Dkt. #14-1, Ex. 2 ¶ 21.)

13   Even though Kishner affirmatively denied saying Dabney did not have integrity or that he used his

14   position to acquire personal benefit or that he was disciplined for violation of SCR 158 & 160,

15   these additional efforts to clarify her statement were not enough to satisfy the Rule's burden for

16   misleading statements.  The Committee's position obligates Kishner to make Dabney's response

17   on his behalf—despite the fact that Dabney had the immediate opportunity to explain, and did so.

18   In other words, the Committee requires a judicial candidate who makes a factual statement to

19   exhaustively explain all possible interpretations of the facts—not her opponent.  This application

20   of the Rule is unconstitutional because avoiding false statements is not enough to avoid censure, it

21   requires candidates to avoid any public statement that could be misconstrued.

22             Accordingly, the Court finds that Kishner has a likelihood of success on the merits

23   of her assertions that the Rule (and the actions of the Committee based upon the Rule) is

24   unconstitutional as applied because the Rule prohibits more than false statements—it also

25   prohibits truthful statements that a hypothetical individual may find misleading, and because the

26   Rule is vague and overbroad.

10

AO 72
(Rev. 8/82)

1    **III.       Likelihood of Irreparable Harm**

2           Kishner argues that the Committee's continued publication and dissemination of its

3    Decision will cause irreparable harm for three reasons.  First, Kishner argues that the publication

4    deprives her of her First Amendment rights and the loss of a First Amendment freedom,

5    constitutes irreparable injury, even if the period of time is minimal.  Second, she argues that

6    publication on the eve of Election Day could very well influence the outcome of the election and

7    that recision of the publication will allow her to counteract part of the cloud cast over her

8    campaign.  Third, she argues that there is irreparable harm because she will be unable to fully

9    litigate her claim prior to the November 2nd General Election.   The Committee simply argues that

10   it cannot "unring the bell," thus, the Court cannot undo any injury or prevent any further injury.

11          The Court finds that the continued publication and dissemination of the

12   Committee's erroneous decision constitutes irreparable harm to Kishner because the decision

13   violated her First Amendment rights.  Contrary to the Committee's assertions, the Court can

14   attempt to undo this continuing injury with an injunctive remedy.  Although an order attempting to

15   "unring the bell" may not completely alleviate the injury, it will minimize further injury to the

16   extent possible.

17   **IV.       Balance of Equities**

18          Kishner argues that the balance of equities tips in her favor because continued

19   publication could have disastrous consequences for her campaign and recision of the publication

20   pending a determination of her constitutional claims will not cause any harm to the state's interest

21   in maintaining the integrity of the electoral process.  The Court agrees.  The balance of equities

22   tips in Kishner's favor because the consequences of continued publication of the unconstitutional

23   decision greatly outweigh the Committee's interest in leaving the opinion published as is.  In fact,

24   the outcome of the election could very well rest on voters' perception of Kishner as a result of the

25   unconstitutional decision.

26   /

AO 72
(Rev. 8/82)

**V.      Public Interest**

Kishner argues that there is a significant public interest in upholding First Amendment principles.  She further argues that the public has an interest in free and open debate among judicial candidates and the Committee's decision to censure Kishner will have a chilling effect among future judicial candidates. Again, this TRO requirement tips in favor of Kishner. The continued suppression of Kishner's speech deprives the public of hearing important political speech concerning Dabney's qualifications.  Courts have consistently recognized the significant public interest in upholding First Amendment principles.  Furthermore, the public has a great interest in judicial candidates' qualifications and a free, open debate concerning those qualifications.

/

/

/

/

/

/

/

/

/

/

/

/

/

/

/

12

**CONCLUSION**

Accordingly, and for good cause appearing,

IT IS HEREBY ORDERED that Kishner's Motion for Temporary Restraining Order (#10) is GRANTED.

IT IS FURTHER ORDERED that Rule 4.1(A)(11) of the Nevada Code of Judicial Conduct is unconstitutionally vague as to the term "misleading."

IT IS FURTHER ORDERED that Rule 4.1(A)(11) of the Nevada Code of Judicial Conduct was unconstitutional as applied to Kishner.

IT IS FURTHER ORDERED that the Committee immediately: (1) rescind and withdraw its censure decision 10-7, filed October 25, 2010; (2) remove the censure decision 10-7 from the Committee's website post this Court's decision ordering removal; and (3) provide notice of withdrawal and a copy of the Court's ruling to the same extent disseminated since publication. The notice shall be entitled "Published Decision 10-7 (re: Joanna S. Kishner) Rescinded by Order of U.S. District Court."

Dated: October 28, 2010.

_____
**ROGER L. HUNT**
**Chief United States District Judge**

AO 72
(Rev. 8/82)